# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOSEPH LAWRENCE CURRY, | : | |
| | : | C.A. No. 04-175-JJF |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DOVER POLICE DEPARTMENT, and GREGORY HOPKINS, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT, OFFICER GREGORY HOPKINS' LEGAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT**

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

DANIEL A. GRIFFITH, ESQ.
Delaware Bar ID No. 4209
1220 North Market Street, 5th Floor
P.O. Box 130
Wilmington, DE  19899-0130
(302) 552-4300
e-mail:  dagriffith@mdwcg.com
*Counsel for Defendant Gregory Hopkins*

Date:  9/26/07

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ii

I. INTRODUCTION 1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY 3

III. LEGAL ARGUMENT 6

    SINCE PLAINTIFF'S PROPOSED "AMENDMENT" TO HIS COMPLAINT IS PREJUDICIAL TO THE DEFENSE AND DOES NOT SERVE THE INTERESTS OF JUSTICE, IT SHOULD BE DENIED. 6

CONCLUSION 9

# TABLE OF AUTHORITIES

**Cases**

*Fomane v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed. 2d. 222 (1962) ................................ 6

*Gay v. Petsock, et al*, 917 F.2d. 768 (3d. Cir. 1990) ....................................................................... 6

I. **INTRODUCTION**

This action arises out of the allegedly excessive force employed in connection with Plaintiff's arrest by Defendant, Officer Gregory Hopkins of the City of Dover Police Department, on January 13, 2004. Mr. Curry filed this action *pro se* on March 22, 2004 on the form provided by the court for alleged civil rights violations (D.I. No. 2). Because the allegations in the Complaint were adequately made as to Officer Hopkins, Officer Hopkins filed an Answer to Mr. Curry's Complaint. (D.I. No. 23). Mr. Curry has since pursued his case aggressively, serving multiple discovery requests and filing multiple motions (D.I. No. 32, 37, 38, 50, 53, 71, 79, 100, 112, 115). Almost two years ago, on October 31, 2005, the pre-trial conference was conducted before Judge Jordan in preparation for a scheduled November 22, 2005 trial.

The case was stayed shortly thereafter and, following the lifting of the stay, Mr. Curry obtained counsel appointed pursuant to the Federal Civil Panel program. Mr. Curry's new counsel ostensibly seeks to start the case all over again. Specifically, Plaintiff's counsel seeks to:

1. Replace Mr. Curry's original Complaint (which formed the basis for three years of litigation) in its entirety. *Every one* of the allegations in the original Complaint which formed the basis of this litigation is proposed to be deleted.

2. File a wholly new Complaint which alleges completely new theories of liability which are (a) legally insufficient, yet (b) would form the basis for re-starting the litigation from scratch.

3. Use the new Complaint as a basis for legitimizing the following discovery requests which Plaintiff's new counsel has made:

    A. Depositions of all police officers involved in the Plaintiff's arrest.

    B. Subpoena upon the Dover Police Department for the following:

        i. all documents and things relating to the Plaintiff's arrest;

        ii. all documents and things relating to all accusations of excessive force involving Officer Hopkins.

        iii. all documents and things relating to all investigations of excessive force involving Officer Hopkins;

        iv. all documents and things relating to Officer Hopkins' personnel file;

        v. all documents and things relating to the employment of Officer Hopkins and Mr. Curry at Sugar Loaf Farms;

        vi. all documents and things relating to Dover Police Department's policy relating to K-9 units.

    C. Deposition of Officer Hopkins

    D. "Written discovery" of Officer Hopkins

    E. Subpoenas to all of Plaintiff's medical providers

    F. Depositions of doctors who treated Mr. Curry subsequent to his arrest.

Respectfully, counsel from the Federal Civil Panel program were not appointed to re-start the case three years after it was filed and aggressively litigated. Rather, as the Order for Appointment (Exhibit "A") makes clear, counsel was appointed for Mr. Curry because of his fragile mental state, because the case might require presentation of expert evidence, and because

the complex legal issues involved in this civil rights litigation "**as the case approaches trial**" (see Exhibit "A" emphasis added).

Since the interests of justice would be disserved by allowing the proposed amendment, the application should be denied with prejudice.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

In the early morning hours of January 13, 2004, Joseph Curry committed a strong-arm robbery at Dover Downs in Dover, Delaware. (See Exhibit "B"). Mr. Curry fled the scene in a 1996 Chevrolet Cavalier traveling between 80 and 100 M.P.H. while under the influence of alcohol. (See Exhibit "B"). Once Mr. Curry's vehicle was forced to stop, he fled on foot and was ultimately apprehended by Dover Police Department K-9 Officer Gregory Hopkins (see Exhibit "B"). The police chase was captured on videotape from the pursuing officer's vehicle.

Mr. Hopkins was convicted of the underlying crimes. Having been adjudicated an habitual offender he remains incarcerated at the Sussex County Correctional Institute. [1]

On March 22, 2004, Mr. Curry filed his pro se Complaint in this matter against Officer Hopkins and the City of Dover Police Department (D.I. No. 2). He filed an Amended Complaint on April 12, 2004 (D.I. No. 4). He was granted leave to proceed *in forma pauperis,* on April 26, 2004 (D.I. No. 5). Inasmuch as Mr. Curry's pro se Complaint (on the court-provided form for civil rights claims) was properly pled as to Officer Hopkins, Officer Hopkins filed his Answer to Mr. Curry's Complaint on August 17, 2004 (D.I. No. 23).

On May 6, 2004, Mr. Curry filed his first Motion for the Appointment of Counsel (D.I. No. 11), arguing that, as a consequence of his incarceration, he was being denied access to the legal materials appropriate for his representation. He reiterated this request on August 27, 2004

3

(D.I. No. 29). On September 20, 2004, Mr. Curry made a request to his warden for access to media and law library services. (D.I. No. 34). On January 18, 2005, Mr. Curry again filed a Motion for Appointment of Counsel (D.I. No. 53) once again arguing that he was being denied access to the law library and the materials necessary for the prosecution of his case. On May 6, 2005, Judge Jordan reserved decision on Mr. Curry's applications to appoint counsel (D.I. No. 64), and requested the state's Attorney General's office respond to Mr. Curry's allegations concerning his access to law library materials necessary to prosecute his case (D.I. No. 65).

On May 16, 2005, the Deputy Attorney General's office wrote to Judge Jordan enclosing exhibits and affidavits establishing that Mr. Curry had not only had ample access to the law library and other legal materials, but that he had been using them exhaustively (D.I. No. 66, 67). (See Exhibit "C"). Specifically, Judge Jordan noted in his Memorandum Order:

> Concern over Curry's access to legal resources has been resolved by the Attorney General's *amicus curiae* brief, which rebuts any implication that Curry has been denied to legal materials or the courts. The data provided…show that Curry has visited the law library nearly 100 times since February, 2004 and received assistance from prisoner paralegals on 8 separate occasions. Additionally, Curry has received over 750 pages of legal materials free of charge, indicating that he has adequate access to legal materials. (See Exhibit "C", p. 3).

Significantly, Judge Jordan also commented upon (a) the relatively straightforward nature of this case; and (2) Mr. Curry's competent representation of himself:

> While legal complexities may arise in unexpected places, there should be none in this case. Curry's claim of a civil rights violation involves a simple legal theory based on an allegation of an assault by a police officer. Furthermore, there is no indication that the assistance of counsel is necessary to conduct factual investigation, as the allegations stem from a single incident involving Curry and the defendant. Similarly, the straightforward nature of Curry's Complaint does not require the assistance of

---

[1] These facts are undisputed and no exhibits cooberating their truth have been appended.

4

> counsel to perform adroit witness examinations addressing witness credibility or expert testimony.
>
> …Curry has demonstrated though his papers and pleadings that he is capable of representing himself.  He has successfully participated in discovery and teleconferences, conducted investigations and filed papers on his on behalf.  His papers reference the Federal Rules of Civil Procedure, statutes, legal precedent and case materials.  (See Exhibit "C.", p. 3-4).

On the eve of the November 20, 2005 trial, Judge Jordan stayed the case at Mr. Curry's request so that he could undergo the psychiatric treatment ordered in connection with his underlying criminal case (D.I. No. 92).  But for discovery allegations on the part of Mr. Curry (i.e., providing medical records) the case was essentially trial ready at that time.

Since the lifting of the stay requested by Mr. Curry, counsel was appointed for him pursuant to the Federal Civil Panel program.  As the Order for the appointment makes clear, the appointment was primarily for the purpose of presenting the case for trial given the necessity of expert testimony and the nature of a federal civil rights claim.  The Order was self-evidently <u>not</u> designed to start the case all over again, with an Amended Complaint, a new round of written discovery requests and numerous depositions, both fact and expert.  Nevertheless, appointed counsel for Mr. Curry now seeks to amend Mr. Curry's Complaint to add multiple different legal theories which have never been pled before and then conduct wholesale discovery as if the parties were starting from scratch.

Because the proposed application does not serve the interests of justice pursuant to Fed.R.Civ.P. 15, the application should be denied.

5

### III.  LEGAL ARGUMENT

### SINCE PLAINTIFF'S PROPOSED "AMENDMENT" TO HIS COMPLAINT IS PREJUDICIAL TO THE DEFENSE AND DOES NOT SERVE THE INTERESTS OF JUSTICE, IT SHOULD BE DENIED.

As an initial matter, Plaintiff's proposed new pleading is not so much an "amendment" to the original Complaint as it is a *replacement* of the original Complaint with a whole new Complaint after three years of litigation.  A simple review of the pleadings makes this clear.  *Every line and every word* of the previous Complaint is being removed.  *Every line and every word* of the proposed Amended Complaint is new.  Thus, Plaintiff's application is really a request to start over with a new Complaint.  Given the factual background and procedural history as set forth above (supra) this request should be denied.

Although leave to amend a Complaint should be freely granted in the interests of justice, see, *Fomane v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed. 2d. 222 (1962), a motion to amend is committed to the sound discretion of the district judge.  See, Fed.R.Civ.P. 15(a); *Gay v. Petsock*, et al, 917 F.2d. 768 (3d. Cir. 1990).  Where the proposed amendment is an attempt to add belated claims, the district court's rejection of that attempt as unduly prejudicial is within the discretion of the court.  *Id.*

Here, District Judge Jordan has already made clear that the underlying excessive force claim is relatively straightforward and that Mr. Curry has adequately represented his interests up through the eve of trial:

> While legal complexities may arise in unexpected places, there should be none in this case.  Curry's claim of a civil rights violation involves a simple legal theory based on an allegation of an assault by a police officer.  Furthermore, there is no indication that the assistance of counsel is necessary to conduct factual investigation, as the allegations stem from a single incident involving Curry from the defendant. Similarly, the straightforward nature of Curry's Complaint does not require assistance of counsel

6

> to perform adroit witness examinations addressing witness credibility or expert testimony.
>
> Concern over Curry's access to legal resources has been resolved by the Attorney General's *amicus curiae* brief, which rebuts any implication that Curry has been denied access to legal materials or the courts. The data…show that the Curry has visited the law library nearly 100 times since February 2004, and received assistance from prisoner paralegals on 8 separate occasions. Additionally, Curry has received over 750 pages of legal materials free of charge, indicating that he has adequate access to legal materials.
>
> Curry has demonstrated through his papers and pleadings that he is capable of representing himself. He has successfully participated in discovery and teleconferences, conducted investigations, and filed papers on his on behalf. His papers reference the Federal Rules of Civil Procedure, statutes, legal precedent and case material…he has demonstrated adequate ability and access to resources in representing himself…see Exhibit "C".

There are two primary reasons for the appointment of counsel to try the case for Mr. Curry: (1) his recent psychiatric treatment which calls into question his ability to try the case on his own behalf; and (2) the necessity of retaining and calling experts as witnesses. That is, counsel is appointed essentially to prepare and try a case that has been litigated for three years. These facts were made clear in this Court's April 26, 2007 Order granting Mr. Curry's most recent Motion to Appoint Counsel, wherein it was stated that the appointment was necessary "as the case approaches trial". See Exhibit "A".

Given that the whole purpose of the appointment was to prepare Mr. Curry's case for trial and to try the case, Plaintiff's counsel's proposed amendments would needlessly complicate and confuse the case, necessitating an extraordinary (and unwarranted) extension of time. For instance, whereas the original, properly-pled Complaint alleged Constitutional deprivations under 42 U.S. §1983, by which Officer Hopkins' conduct will be measured according to a Constitutional standards), the proposed amendment alleges that Mr. Hopkins was "negligent" for

7

violating a custom or policy of the City of Dover Police Department, a wholly different standard. The proposed Amended Complaint also alleges that Mr. Hopkins violated a state statute, 11 Del. C. §467. Finally, the proposed Amended Complaint references the Delaware County and Municipal Tort Claims Act, 10 Del. C. §4010 et seq, representing *yet another standard of conduct.* Plaintiff's counsel motivations for substituting new (scattershot) allegations is apparent: plaintiff self-evidently intends to use the amended pleadings to legitimize a massive undertaking of new discovery as if the case was just starting rather than being ready for trial. Attached as Exhibit "D" is a copy of Plaintiff's proposed application to amend the Scheduling Order to conduct "certain discovery" including:

    A.    Depositions of all police officers involved in the Plaintiff's arrest.

    B.    Subpoena upon the Dover Police Department for the following:

        i.    all documents and things relating to the Plaintiff's arrest;

        ii.    all documents and things relating to all accusations of excessive force involving Officer Hopkins.

        iii.    all documents and things relating to all investigations of excessive force involving Officer Hopkins;

        iv.    all documents and things relating to Officer Hopkins' personnel file;

        v.    all documents and things relating to the employment of Officer Hopkins and Mr. Curry at Sugar Loaf Farms;

        vi.    all documents and things relating to Dover Police Department's policy relating to K-9 units.

    C.    Deposition of Officer Hopkins

      D.      "Written discovery" of Officer Hopkins

      E.      Subpoenas to all of Plaintiff's medical providers

      F.      Depositions of doctors who treated Mr. Curry subsequent to his arrest.

It is apparent from both the Motion to Amend Complaint and the application to amend the Scheduling Order that, having assuming Plaintiff's representation, appointed counsel requests that we go back to square one on a case that has been pending for three and was essentially trial-ready a year and a half ago. This request contravenes not only general principles of justice but also the specific terms and conditions of (a) Judge Jurden's initial Memorandum Order and Opinion denying Mr. Curry's Motion to Appoint Counsel; and (b) the limited terms of this Court's appointment of new counsel which referenced the fact that the appointment was necessary "as the case approaches trial".

## CONCLUSION

For all the foregoing reasons, it is respectfully requested that this Honorable Court deny Plaintiff's Motion to Amend Complaint pursuant to Fed. R. Civ. P. 15.

**MARSHALL, DENNEHEY, WARNER,  
COLEMAN & GOGGIN**

*/s/ Daniel A. Griffith   DE ID No. 4209*  
_____  
DANIEL A. GRIFFITH, ESQ.  
Delaware Bar ID No. 4209  
1220 North Market Street, 5th Floor  
P.O. Box 130  
Wilmington, DE  19899-0130  
(302) 552-4300  
*Counsel for Defendant Gregory Hopkins*

15/535517.v1

9