# EXHIBIT R

LEXSEE 1994 U.S. DIST. LEXIS 16994

JAMES FRIEMAN and BARBARA FRIEMAN, Plaintiffs v. USAIR GROUP, INC, et al., Defendants

CIVIL ACTION NO. 93-3142

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1994 U.S. Dist. LEXIS 16994*

November 23, 1994, Decided
November 23, 1994, Filed

**COUNSEL:** [*1] For JAMES FRIEMAN, BARBARA FRIEMAN, PLAINTIFFS: MICHAEL F. BARRETT, ROBERT C. DANIELS, DANIELS, SALTZ, MONGELUZZI & BARRETT, LTD., PHILA, PA.

For THOMAS J. GREGORY, ESQ., PETITIONER: THOMAS J. GREGORY, PHILA, PA.

For USAIR GROUP, INC., USAIR, INC., DEFENDANTS: JAMES D. GOLKOW, COZEN AND O'CONNOR, PHILA, PA. PATRICK J. O'CONNOR, COZEN & O'CONNOR, PHILA, PA. ANN T. FIELD, PHILADELPHIA, PA.

For USAIR GROUP, INC., USAIR, INC., THIRD-PARTY PLAINTIFFS: JAMES D. GOLKOW, COZEN AND O'CONNOR, PHILA, PA. PATRICK J. O'CONNOR, COZEN & O'CONNOR, PHILA, PA. ANN T. FIELD, PHILADELPHIA, PA. For CHANCE COACH, INC., THIRD-PARTY PLAINTIFF: STEPHEN M. ORLOFSKY, BLANK, ROME, COMISKY & MC CAULEY, PHILA, PA. JAY H. GREENBLATT, VINELAND, NJ. For JAMES FRIEMAN, BARBARA FRIEMAN, PLAINTIFFS: MICHAEL F. BARRETT, ROBERT C. DANIELS, DANIELS, SALTZ, MONGELUZZI & BARRETT, LTD., PHILA, PA.

For CHANCE COACH, INC., THIRD-PARTY DEFENDANT: STEPHEN M. ORLOFSKY, PATRICK J. MC DONNELL, BLANK, ROME, COMISKY & MC CAULEY, PHILA, PA. JAY H. GREENBLATT, VINELAND, NJ. For OGDEN-ALLIED MAINTENANCE COMPANY, OGDEN ALLIED SERVICES CORPORATION, THIRD-PARTY DEFENDANTS: LAWRENCE M. SILVERMAN, SILVERMAN, COOPERSMITH, HILLMAN & [*2] FRIMMER, PHILA, PA.

**JUDGES:** JUDGE ROBERT S. GAWTHROP, III

**OPINION BY:** Robert S. Gawthrop, III

**OPINION**

*OPINION*

Gawthrop, J.

November 23, 1994

This personal injury action, over which this court exercises diversity jurisdiction, is before the court on various discovery motions. Plaintiff James Frieman alleges that he is totally and permanently disabled as a result of an injury sustained aboard a bus that shuttles passengers to and from USAir commuter flights at Philadelphia International Airport. Mr. Frieman hit his head on the bus's overhead air conditioning unit, allegedly suffering serious and permanent injuries to his spinal column.

I. *Plaintiff's Motions to Compel*

Plaintiffs move to compel the production of USAir's investigative files concerning Mr. Frieman's accident and the answers to interrogatories about the details of these

investigative efforts. [1]

> [1] Plaintiffs move to strike USAir's objections and compel answers to Interrogatory 16 and Document Requests 5 and 11. Interrogatory 16 requests various information about any films, pictures, videotapes or other documentary data taken by USAir of the accident location or of the persons, vehicles or structures involved in the accident. It seeks the date on which pictures were taken or data was gathered, the present whereabouts of such information, and the names and addresses of those who possess this information.
>
> The Document Requests seek: " (5) any and all documentary data pertaining to investigations conducted by defendants, defendants' agents and/or employees, or anyone else acting on defendants' behalf;" and "(11) Any films, videotapes and narrative summaries concerning or relating to the plaintiff and activities prior to the accident."

[*3] A. *Motion to Compel Investigatory Materials*

USAir produced all films and pictures that it took of the accident site or of the plaintiff. It concedes that under *Snead v. American Export-Isbrandtsen Lines, Inc., 59 F.R.D. 148 (E.D.Pa. 1973)*, it must provide the plaintiff with copies of any surveillance pictures of the plaintiff that it plans to use at trial. [2] The company argues, however, that narrative summaries and other non-pictorial investigative materials are attorney work product, and plaintiffs have not made the showing of necessity required to obtain such materials.

> [2] At oral argument, USAir's counsel stated that no videotapes or films of the plaintiff have been taken. It has produced photocopies of pictures that it took.

According to *Fed.R.Civ.P. 26(b) (3)*, a party may obtain "documents and other tangible things" prepared in anticipation of litigation "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case [*4] and that the party is unable without undue hardship to obtain the substantial equivalent by other means."

In *Snead*, the court determined that parties requesting videotape and film surveillance are usually able to demonstrate substantial need for pictorial work product because films are only available from the person who took them, and parties usually have a substantial need to know what the films and pictures depict in order to prepare for trial. *59 F.R.D. at 150-51*. The court explained that "the camera may be an instrument of deception. It can be misused. Distances may be minimized or exaggerated. Lighting, focal lengths, and camera angles all make a difference. Action may be slowed down or speeded up. The editing and splicing of films may change the chronology of events." *Id. at 150*. In other words, a party cannot obtain the "substantial equivalent" of pictorial evidence by other means because it is impossible to examine the techniques that are used and the circumstances surrounding the making of the picture without observing the picture itself.

The need to view the opposing party's written surveillance notes to prepare [*5] for trial, as opposed to the need to view pictorial evidence, is less compelling. *See, e.g., Weinhold v. Witte Heavy Lift, Inc.*, 1994 WL 132392 (S.D.N.Y. 1994); *Fisher v. National Railroad Passenger Corp., 152 F.R.D. 145 (S.D.Ind. 1993)*. A party can obtain the substantial equivalent of investigatory notes with interrogatories that elicit information about the investigation or by deposing witnesses interviewed by an investigator. Plaintiff does not argue that it is unable to obtain the substantial equivalent of USAir's investigative files by conducting its own witness interviews or by inquiring about the nature of USAir's investigation. Without this showing of substantial need, I shall not compel USAir to produce its investigatory files.

Although I shall not compel USAir to produce its investigatory files at this stage of the litigation, it must preserve those files. The work product privilege may, under certain circumstances, be waived. *See United States v. Nobles, 422 U.S. 225, 239, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975)*. The Supreme Court cautions that although use of investigatory notes, [*6] documents, and other internal materials to prepare one's case does not usually constitute a waiver of the privilege, "where, as here, counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents." *422 U.S. at 239 n.14*.

In *Nobles*, the defendant used an investigator's notes

from a witness interview to impeach the witness on cross-examination. The defendant also called the investigator as a witness to testify as to the content of witness interviews. The Court ruled that "by electing to present the investigator as a witness, [defendant] waived the privilege with respect to matters covered in his testimony." *422 U.S. at 239*. If USAir uses any investigative notes or documents at trial in a testimonial manner, it will be required to provide those materials to the plaintiff.

B. *Motion to Compel Facts Concerning USAir's Investigation*

Plaintiffs move to compel USAir to answer the type of interrogatories described above, i.e., inquiries that seek factual information [*7] about a party's investigation. Plaintiffs' Interrogatory 16(a)-(d) asks defendants to disclose the date, subject, and activity depicted for any documentary data that it has prepared relating to Mr. Frieman's accident.

The work product doctrine protects "documents and tangible things," and therefore it does not apply to prohibit discovery of facts that are unrelated to the content of work product. *Fisher, 152 F.R.D. at 156*; *Ford v. Philips Elec. Instr. Co., 82 F.R.D. 359, 360 (E.D.Pa. 1979)*. "Facts concerning the creation of work product" are not work product. *Fisher, 152 F.R.D. at 156*.

Further, the facts gained through a party's investigative efforts, "as opposed to the documents containing them or the impressions and conclusions drawn from them, . . . must be disclosed to the opposing party in response to a proper request for discovery." *Swarthmore Radiation Oncology, Inc. v. Lapes, 155 F.R.D. 90, 92 (E.D. Pa. 1994)*. In *Swarthmore*, this court acknowledged that inquiries into the fruits of an investigation sometimes reach "a gray area between facts and the [*8] lawyer's conclusions regarding facts." *Id.* The interrogatory at issue in this case does not reach this gray area. It seeks only the date, subject, and activity captured during USAir's surveillance activities, black and white information that is plainly discoverable.

The discovery rules encourage full pretrial disclosure to insure that trials are "less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co., 356 U.S. 677, 682, 2 L. Ed. 2d 1077, 78 S. Ct. 983 (1958)*. Disclosure not only allows plaintiffs "to review materials for authenticity and otherwise prepare effectively for trial, but it may also encourage settlement of the suit, a legitimate goal of pre-trial discovery." *Wegner, 153 F.R.D. at 156*.

The plaintiffs seek information about USAir's investigative efforts, which they say they need in order to perform their own investigation, to prepare for the defenses that will be presented at trial. The plaintiffs have a right to "investigate those who investigated them" by asking [*9] general questions about the nature of USAir's investigation. *See DiGiacobbe, 1987 WL 11227 at 3* (holding that *Snead* permits discovery of identity of investigators, persons interviewed, and information as to whether written or oral reports were prepared by investigators).

Although Interrogatory 16(e) also requests facts about the creation of USAir's work product, which are not protected by the work product privilege, I shall not compel defendant to answer it. Discovery must be "reasonably calculated to lead to admissible evidence." *Fed.R.Civ.Proc. 26(b) (1)*. Interrogatory 16 (e), which asks for the current whereabouts and identity of the custodian for all documentary data. The only purpose served by this inquiry is to discover the whereabouts of USAir's investigative files. Since the non-pictorial documentary data in this case is not discoverable, Interrogatory 16(e) is not calculated to lead to the discovery of admissible evidence. *See Fisher, 152 F.R.D. at 156-57*.

II. *USAir's Discovery Motions*

USAir moves to compel discovery of various documents and the deposition of Mr. Frieman's former attorney to prove its allegations that Mr. Frieman [*10] is not totally disabled, and that if he is disabled, it is the result of injuries that he suffered before the 1991 shuttle bus accident.

A. *Motions To Compel Production of Documents*

The defendants seek to compel various documents to support their defense that previous injuries suffered by Mr. Frieman caused his disability, including a 1989 taxicab accident. Mr. Frieman recovered substantial sums under an uninsured motorist claim as to the injuries he sustained. They also pursue documents to bolster their contention that Mr. Prieman is not totally disabled. They claim to possess evidence that, since the accident, Mr.

Frieman has gone scuba diving and golfing and taken frequent pleasure trips. USAir's motion seeks to bolster this evidence with additional documentation.

Document Request 5 asks for photocopies of all credit cards that the plaintiffs have used since the accident. USAir obtained plaintiffs' VISA and American Express credit card statements. It requests copies of any other credit cards used by plaintiffs because it is attempting to detail the full schedule of leisure, entertainment and travel activities engaged in by the plaintiffs since Mr. Frieman's accident. Plaintiffs [*11] contend that this request is cumulative and duplicative, because defendants already have information on these activities through plaintiffs' deposition testimony and through the two credit card statements.

Respectfully, defendants are not required to take Mr. Frieman at his word. They are entitled to the opportunity to gather evidence that might impeach his testimony or supplement his memory. Further, the request is not duplicative, since Mr. Frieman could certainly have charged leisure and travel expenses to other credit cards. If the plaintiffs have used credit cards other than the VISA and American Express cards for which defendants possess statements, they shall be required to produce photocopies of those cards.

Document Request 6 asks for copies of all canceled checks and checking account statements for plaintiffs' accounts from the date of the accident to the present. Defendants have since modified this request [3] to include only checks and statements related to plaintiffs' social and entertainment activities and to their nanny. The nanny testified that Mr. Frieman writes checks to her, and USAir wishes to examine his signature on the checks in an attempt to test his claim that [*12] his handwriting skills have deteriorated. Plaintiffs argue that these requests are overly burdensome, cumulative, and duplicative, and that the defendants already possess evidence of their social and entertainment spending and of Mr. Frieman's handwriting.

> 3   See Motion to Compel Production of Documents Directed to Plaintiffs (Seventh Set).

A request for a set of canceled personal checks and statements is not overly burdensome. Most individuals store this paperwork in one place, and the number of checks the Friemans wrote over a three-year period presumably does not amount to an avalanche of documents; it is manageable. For the reason discussed in the section above, defendants' attempt to gain information about trips, social and sporting activities undertaken by the Friemans for which they paid by check instead of credit card is not cumulative and duplicative. USAir's request for the checks signed by Mr. Frieman is also not cumulative. Although USAir has various samples of Mr. Frieman's handwriting, the check [*13] signatures provide evidence of the state of Mr. Frieman's handwriting ability over a long period of time.

USAir also requests various governmental and medical records. [4] The plaintiffs claim that they produced all records in their possession, an assertion that USAir does not challenge. USAir does challenge the plaintiffs' refusal to sign authorization forms on the ground that they are under no obligation to assist USAir in obtaining documents that are not in plaintiffs' actual possession.

> 4   At issue are the following document requests: (1) copies of Mr. Frieman's entire file from the Social Security Administration; (2) a copy of the Department of Motor Vehicles file regarding issuance of Mr. Frieman's handicapped license plate; (3) Mr. Frieman's military medical file; (4) complete copies of records from Drs. James Hamil, Arlen Garb, Sydney Merlis, and copies of records and bills from Columbia Presbyterian Medical Center and St. Luke's Hospital.

*Fed.R.Civ.P.* 34 permits a party to request another party to produce documents [*14] that are "in the possession, custody or control of the party upon whom the request is served." Actual physical possession is not the only test of whether a party has possession, custody or control of documents. If a party has the legal right to obtain documents, then they are within his control, and he must produce them in response to a request if they are otherwise discoverable. *M.L.C., Inc. v. North American Philips Corp., 109 F.R.D. 134 (S.D.N.Y. 1986); Bowman v. Consolidated Rail Corp., 110 F.R.D. 525 (N.D.Ind. 1986)* (individual must produce documents in custody of governmental agency which he has legal right to request); *In re Folding Carton Antitrust Litigation, 76 F.R.D. 420 (S.D.N.Y. 1977).* Plaintiffs are not unduly burdened by the defendants' request that Mr. Frieman sign and submit authorization forms. [5]

> 5   The cases cited by plaintiffs, *Greene v. Sears, Roebuck & Co., 40 F.R.D. 14 (N.D. Ohio 1966),* and *Reeves v. Pennsylvania R. Co., 80 F. Supp.*

*107 (D.Del. 1948)*, fail to consider the argument that a party is in control of his medical records when he has the legal right to request them from his doctor or hospital, which is not surprising, since both cases were decided well before the line of cases that interpreted "control" under *Rule 34* as encompassing the legal right to obtain records.

[*15] Plaintiffs argue that because USAir attempted to secure the records at issue through subpoenas, plaintiffs are not obligated to provide authorization forms. USAir's ability to obtain the documents from alternate sources does not excuse the plaintiffs from their obligation to produce the documents. *See Bowman, 110 F.R.D. at 527* (rejecting argument that plaintiff not required to produce medical records because defendants could obtain them from other sources). The Rules direct parties to seek discovery from an alternate source if discovery from that source would be "more convenient, less burdensome or less expensive." *Fed.R.Civ.P. 26(b)(2)(i)*. Plaintiffs do not assert that USAir can obtain the documents from an alternate source more efficiently.

Plaintiffs also advance relevancy arguments about certain of these records. The records of Dr. Garb, who treated Mr. Frieman for a cervical injury when he was nine years old, are relevant to the issue of whether the 1991 bus accident, which the plaintiffs allege caused permanent spinal cord damage, was the sole medical cause of Mr. Frieman's current physical condition.

So also, without knowledge of the contents [*16] of Mr. Frieman's military medical file, the court must also conclude that these records might contain admissible evidence. Since the plaintiffs claim that Mr. Frieman is disabled, evidence of his past physical injuries is relevant to this case.

In support of their argument that the military medical file is not relevant, plaintiffs submit Mr. Frieman's deposition testimony, in which he stated that he was discharged as a result of a dislocated kneecap. Again, USAir need not take Mr. Frieman at his word, but has the right to examine the file itself. The final documentary issue is USAir's request for Mr. Frieman's personal diaries from 1989 to the present. In addition to documenting Mr. Frieman's social and entertainment activities with these diaries, the defendants also seek to support a defense that the 1989 taxicab accident had as much impact upon Mr. Frieman's lifestyle as the 1991 bus accident did. The plaintiffs provided diaries from the year 1991. [6] They assert that evidence of his activities for the other years would be cumulative and duplicative, in light of the evidence already obtained through deposition testimony, credit cards, and the 1991 diaries.

   6   The parties dispute whether the plaintiffs provided one or two years worth of personal diaries; it is curious why that incontrovertible autobiographical fact should be the subject of factual dispute.

[*17] As discussed earlier, the defendants are entitled to gather evidence challenging Mr. Frieman's deposition testimony. Also, the diaries might well describe activities that are not documented in the checks, credit cards, or dive logs. Perhaps Mr. Frieman paid for some travel or sporting activities in cash, or he engaged in vigorous physical activity that costs nothing.

Further, the entire time period of diaries requested by the defendants is relevant. If Mr. Frieman significantly altered his lifestyle following the 1989 accident, defendants could argue that it was the 1989 accident, rather than the 1991 injury, that caused Mr. Frieman's current disability. Evidence of post-1991 activities is also relevant to the issue of whether Mr. Frieman has recovered from his 1991 injuries.

B. *Motion to Compel Thomas Gregory's Deposition*

USAir moves to compel the deposition of Thomas Gregory, plaintiffs' former attorney. The plaintiffs and Mr. Gregory filed for a protective order on the ground that Mr. Gregory's testimony would reveal information protected by the attorney-client privilege and by various other rules.

Mr. Gregory argues that because he represented the plaintiffs in the instant [*18] case, the defendants may not depose him. Mr. Gregory bases his assertion that "the defense can no more take the deposition of discharged counsel than it could take the testimony of current counsel" upon the assumption that parties may never depose counsel of record. Although deposing an attorney is "not common, it is not without precedent." *Daniels v. Hadley Memorial Hospital, 68 F.R.D. 583, 588 (D.D.C. 1975)*. "If an attorney of record possesses relevant, non-privileged information, that information ought to be discoverable, just as it would be if possessed by a party or a non-party to the litigation." *In Re Arthur Treacher's Franchisee Litigation, 92 F.R.D. 429, 438 (E.D.Pa.*

*1981).* [7]

---

[7] Mr. Gregory is no longer attorney of record. Thus, many factors that militate against allowing parties to depose attorneys of record are not present in this case. An attorney's testimony might require him to remove himself from the case, which might result in undue prejudice to his client's case. *In Re Arthur Treacher's Franchisee Litigation, 92 F.R.D. at 439*; *but see* Rule of Professional Conduct 3.7. Also, permitting attorneys to examine their opponents may lead to unnecessary rancor between attorneys that might hinder the litigation process. *See id.* Finally, parties might abuse the ability to depose attorneys in order to harass the opposition. *Id.* These issues are not present in this case because Mr. Gregory is no longer plaintiff's lawyer.

---

[*19] Courts are reluctant to excuse a witness from being deposed at all. Such a request requires the court to "rule in a vacuum. . . that every question to be asked will seek to elicit privileged information." *Id. at 438*. For this reason, absent "extraordinary circumstances," an order prohibiting the taking of a deposition altogether "would likely be in error." *Id. at 437*.

USAir seeks to depose Mr. Gregory in three general areas, each of which, it argues, does not encroach upon privileged matters. Mr. Gregory's request for a protective order may be granted only if every question proposed by USAir elicits only privileged information.

1. *Information Gained by Gregory Outside of the Attorney-Client Relationship*

USAir intends to ask Mr. Gregory about his observations of Mr. Frieman's physical condition and leisure activities that Mr. Gregory gained outside of the attorney-client relationship. USAir also argues that any conversations that Mr. Gregory and Mr. Frieman had in which Mr. Gregory was acting as a friend are not privileged. Mr. Gregory admits that he is "well-acquainted" with the Friemans, having come to know them "on [*20] a social basis" in 1989. *See Response of Thomas Gregory.*

Mr. Gregory argues that defendants cannot compel him to reveal this information, even though he learned it outside of his role as Mr. Frieman's legal advisor, because Rule 1.6 of the Rules of Professional Conduct prevents him from disclosing any information that "relates to" his representation of Mr. Frieman. Rule 1.6 broadly defines the attorney's duty of confidentiality to cover communications "relating to representation of a client," whether the lawyer gained the information before or after the relationship existed. *See* Comment, Rule 1.6.

*42 Pa. C.S. § 5928*, Pennsylvania's [8] attorney-client privilege statute, not Rule of Professional Conduct 1.6, provides primary guidance as to the scope of the attorney-client privilege in a judicial proceeding. *Commonwealth v. Stenhach, 356 Pa. Super. 5, 514 A.2d 114, 118 (1986)*. The statute is the substantive law which applies in court proceedings; the disciplinary rules "[serve] instead as a regulatory guide and basis for disciplinary action within the legal profession." *Id*; *see also John Doe v. A Corporation, 709 F.2d 1043, 1046 (5th Cir. 1983)*; [*21] *Brennan's Inc. v. Brennan's Restaurants, Inc., 590 F.2d 168, 172 (5th Cir. 1979)* (duty of attorney-client confidentiality and attorney-client privilege are different); *Cohen v. Wolgin*, No. 87-2007, 1991 WL 24752 (E.D. Pa. Feb. 21, 1991). The lawyer's duties under state law are independent of his duties under the rules of ethics. *Maritrans v. Penner, Hamilton & Scheetz, 529 Pa. 241, 602 A.2d 1277, 1284-85 (1992)* (rules of ethics do not create actionable conduct under legal rules).

---

[8] When the claims and defenses at issue in a case arise under state law, state rather than federal law controls interpretation of the attorney-client privilege. *Fed.R.Evid. 501*.

---

Courts note that the comment to Rule 1.6 explains the relationship between the attorney's ethical duty and the privilege: "The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning [*22] a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law." *First Federal Savings & Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co., 110 F.R.D. 557, 563 n.2 (S.D.N.Y. 1986)*, quoting Comment to Rule 1.6.

*42 Pa. C.S. § 5928* is narrower in scope than Rule 1.6., providing that "in a civil matter counsel shall not be competent or permitted to testify to confidential communications made to by him by his client." The attorney-client privilege protects only "information

communicated by the client to counsel in confidence for the purpose of obtaining legal advice." *In re Tire Workers Asbestos Litigation, 125 F.R.D. 617 (E.D.Pa. 1989)*; see also *Panko v. Alessi, 362 Pa.Super. 384, 524 A.2d 930 (1987)*. If a client communicates with the attorney as a friend, with no intention of obtaining legal advice through his communications, those communications are not privileged. See *Beeson v. Beeson, 9 Pa. 279 (1848)*. The attorney-client privilege does not [*23] exist "Just because one party to the communication has the title of attorney.'" *USF&G v. Barron Indus., Inc., 809 F. Supp. 355, 364 (M.D.Pa. 1992)*. The privilege applies only to discussions in which the attorney is acting as a legal advisor. *Id.*

According to the attorney-client privilege rule, USAir may ask Mr. Gregory about his observations of Mr. Frieman's physical condition and activities and about any conversations that the two had in which Mr. Gregory was not acting in his capacity as Mr. Frieman's attorney.

2. *Information About "The True Manner" In Which The Accident Occurred*

USAir argues that its second area of inquiry, "information imparted by James Frieman to Gregory regarding the true manner in which this accident occurred," also does not request privileged information. *Defendant USAir's Motion to Compel.* According to USAir, Mr. Frieman changed his account of how the accident occurred at some point during the litigation, first stating that the lack of warning labels on the bus's overhead air conditioning unit caused the injury, and then, months later, not too long after plaintiffs' present counsel entered his appearance in the case, [*24] Mr. Frieman testified that the bus's forward movement caused his injury. USAir seeks to question Mr. Gregory about what he knows about Mr. Frieman's alleged change in his story. USAir argues that this information is not privileged, for two reasons.

a. *Waiver of the Attorney-Client Privilege*

First, USAir asserts that Mr. Frieman waived the privilege attached to any attorney-client communications about the cause of the accident because he divulged this information to third parties through his interviews, depositions, and pleadings. The communications conducted by an attorney and his client to prepare a document that will ultimately be divulged to third parties do not lose their privileged status. See, e.g., *Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968)* (information imparted by client to prepare complaint is privileged). Only statements that are ultimately divulged in these documents, as opposed to statements made to prepare them, lose their privileged status. *Id.*

b. *Exception to Prevent A Criminal Act*

USAir also asserts that Rule of Professional Conduct 1.6(c) (1) [9] requires Mr. Gregory to divulge what he knows about Mr. Frieman's allegations. [*25] It argues that if Mr. Frieman only told Mr. Gregory the first recitation of the accident, omitting any mention of the later added movement-of-the bus causal scenario, that the first statement would be highly relevant to demonstrate that the second statement, embroidered with the bus-lurch addendum to his tale, was, to put it bluntly, perjury. [10] Perjury is, of course, is a criminal act.

> 9  That portion of the Rule reads: "A lawyer may reveal such information to the extent that the lawyer reasonably believes is necessary: (1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in death or substantial bodily harm or substantial injury to the financial interests or property of another."
> 
> 10  I emphasize that I make no such accusation, one way or the other. I know not where the truth lies; my mission is merely to provide disinterested stewardship over its quest.

As discussed *supra at pages 15-16*, law emanating from the statute governing attorney-client privilege [*26] guides this court's decision as to what information Mr. Gregory must divulge. The crime-fraud exception to the attorney-client privilege permits a court to compel disclosure of attorney-client communications made for the purpose of furthering a future unlawful act. See, e.g., *U.S. v. White, 281 U.S. App. D.C. 39, 887 F.2d 267, 271 (D.C. Cir. 1989)*; *In re Grand Jury Proceedings, 604 F.2d 798, 802 (3d Cir. 1979)*. "The right to counsel includes no right to have a lawyer who will cooperate with planned perjury." *Nix v. Whiteside, 475 U.S. 157, 173, 89 L. Ed. 2d 123, 106 S. Ct. 988 (1986)*;

The crime-fraud exception has "a precise focus: It applies only when the communications between the client and his lawyer further a crime, fraud or other misconduct. It does not suffice that communications may be related to a crime. To subject the attorney-client communications to disclosure, they must actually have been made with an

intent to further an unlawful act." *White, 887 F.2d at 271*; *see also In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986)* [*27] (per curiam). The exception only applies if communications with counsel were intended in some way to facilitate or conceal the criminal activity." *Id.*

Mr. Gregory's communications with Mr. Frieman about "the true manner in which the accident allegedly took place are subject to disclosure only if the two discussed how Mr. Frieman might supplement his testimony with untrue statements in order to improve his case. USAir seeks to ask whether Mr. Frieman ever told Mr. Gregory that the bus's movement caused his injury. Because Mr. Gregory would thus know Mr. Frieman had committed perjurious fraud at his deposition, and whether he intends to do so at trial as well, it argues that their communications are not privileged. Mr. Gregory may not hide behind the privilege and let the alleged perjurious fraud play out. Rather, USAir may ask Mr. Gregory if the plaintiffs consulted him about changing Mr. Frieman's version of events. But absent a showing that plaintiffs consulted Mr. Gregory with this purpose in mind, his confidential attorney-client communications about the accident remain privileged.

3. *Statements During Settlement Negotiations*

Finally, USAir seeks to depose Mr. Gregory about [*28] statements that he made to insurance company representatives during negotiations to settle his 1989 taxicab accident claim. According to USAir, Mr. Gregory represented to the insurance company that Mr. Frieman was totally disabled as a result of the 1989 taxicab accident. Other than the Rule 1.6 argument, already discussed at 15-16, *supra,* the plaintiffs and Mr. Gregory do not base Mr. Gregory's refusal to submit to this area of inquiry upon the attorney-client privilege. Plaintiffs principally rely upon *Fed.R.Evid. 408,* [11] *Compromise and Offers to Compromise.* That provision prohibits using statements made during settlement negotiations to prove the validity or amount of a claim. Under *Rule 408,* evidence of discussions aimed at "compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount." Assuming Mr. Gregory made wrongful comments, while seeking to settle the 1989 claim, as to the gravity of Mr. Frieman's injuries, those statements would seem to fall squarely within the rule.

11  Rule 408 reads in full:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either the validity or amount, is not admissible to prove liability for or invalidity of the claim or amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation.

[*29] USAir argues that two exceptions to *Rule 408* permit it to introduce these statements at trial. First, it argues that because Mr. Gregory was making statements on behalf of the plaintiff, his principal, those admissions, imputable to the party plaintiff, are fair game for discovery and admission at trial. That used to be the law, *see, e.g., Hiram Ricker and Sons v. Students Int'l Meditation Soc., 501 F.2d 550 (1st Cir. 1974),* but it is no more. *Rule 408* expressly expanded the law to include admissions of fact: "Evidence of conduct or statements made in compromise negotiations is likewise not admissible." The quoted language does not exclude, but, rather, includes admissions of fact, as falling within the offers-of-compromise protection. *See* Advisory Committee Note, *Rule 408.*

Second, USAir argues that *Rule 408* only bars evidence of settlement discussions concerning the compromised claim. Since the 1989 case is a completely separate cause of action, it reasons, evidence of settlement discussions in that case is admissible in this

case. There is case law to support USAir's proposition that *Rule 408* only bars evidence of settlement discussions in the [*30] claim "under negotiation." *Broadcort v. Summa Medical Corp., 972 F.2d 1183, 1194 (10th Cir. 1992)*; *Wyatt v. Security Inn Food & Beverage, 819 F.2d 69, 71 (4th Cir. 1987)*; *Vulcan Hart Corp. v. NLRB, 718 F.2d 269, 277 (8th Cir. 1983)*; but see *Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc., 687 F.2d 563, 568-69 (2d Cir. 1982)*; *Day v. NLO, Inc., 798 F. Supp. 1322, 1330 (S.D. Oh. 1992)*. This court need not explore the issue at this point in the litigation. I am reluctant to preclude defendants from discovering this evidence at Mr. Gregory's deposition. Under *Rule 408*, statements made during settlement discussions may be admissible for purposes other than proving liability for or amount of the underlying claim. ("This rule also does not require exclusion when the evidence is offered for another purpose."). For example, courts have permitted this evidence for purposes of impeaching witnesses. See, e.g., *Stainton v. Tarantino, 637 F. Supp. 1051, 1081 (E.D.Pa. 1986)* (statements made during compromise [*31] negotiations admissible to impeach witness). The plaintiffs are free to pose objections to this evidence at trial, where the court will be better equipped to assess its admissibility. See, e.g., *Goldman v. Mooney, 24 F.R.D. 279 (W.D.Pa. 1959)*; *Fed.R.Civ.Proc. 32*.

An order follows.

ORDER

AND NOW, this 23rd day of November, 1994, upon consideration of the various motions filed in this case, and after colloquy thereon, the Court enters the following Order:

1. Plaintiff's Motion to Strike Objections and Compel Answers is adjudicated as follows:

(a) Plaintiff's Motion to Compel Answers to Interrogatory 16(a)-(d) is GRANTED.

(b) Plaintiff's Motion to Compel Answers to Interrogatory 16(e) and Document Requests 5 and 11 is DENIED.

2. Defendant USAir's Motion to Compel the Production of Documents and Defendant USAir's Motion to Compel the Production of Documents Directed to Plaintiffs (Seventh Set) are GRANTED. The plaintiffs shall provide the documents requested in the Motion to Compel as amended by the Motion to Compel the Production of Documents Directed to Plaintiffs (Seventh Set)

3. The Motion of Attorney Thomas Gregory and Plaintiffs for a Protective [*32] Order is DENIED.

4. Defendant USAir's Motion to Compel the Deposition of Thomas Gregory is GRANTED. The scope of the deposition shall be consistent with the attached Opinion.

By the Court:

Robert S. Gawthrop, III, J.