# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSEPH LAWRENCE CURRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No: 04-175-JJF |
| v. | ) |
| | ) |
| GREGORY HOPKINS, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT, GREGORY HOPKINS' RESPONSES
## TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS

Defendant, Gregory Hopkins, by and through his counsel, Whiteford Taylor & Preston, LLC, hereby responds to Plaintiff's First Request for Admission as follows:

### GENERAL OBJECTION

To the extent that Plaintiff's Request for Admissions is prefaced by several paragraphs of "Definitions" and "Instructions", they are self-evidently vague, ambiguous and incapable of meaningful responses. The following responses are subject to this general objection.

### RESPONSES TO REQUEST FOR ADMISSIONS

REQUEST NO. 1:    Officer Hopkins knew Mr. Curry before January 13, 2004.

RESPONSE:    Admitted.

REQUEST NO. 2:    Officer Hopkins was at one time employed at or by Sugarloaf Farms:

RESPONSE:    Admitted to the extent that Officer Hopkins helped out at Sugarloaf Farms inasmuch as the facility was operated by Officer Hopkins' girlfriend's brother. Officer Hopkins was paid for the work he performed but there was no classic "employer-employee" relationship.

REQUEST NO. 3:    Officer Hopkins was at one time employed by or by Brookstone Farms.

RESPONSE: Denied (inasmuch as Officer Hopkins does not know what Brookstone Farms is).

REQUEST NO. 4   Officer Hopkins worked with Mr. Curry at some point prior to January 13, 2004.

RESPONSE: Admitted in part; denied in part. It is admitted that Officer Hopkins worked at Sugarloaf Farms at some point prior to January 13, 2004 and that Mr. Curry worked at the same facility pursuant to a work release program. Thus, Officer Hopkins and Mr. Curry both worked at the same facility at or about the same time, although to the extent the request is intended to suggest that they worked "with" each other on a particular project or on some joint venture, the request is denied.

REQUEST NO. 5:   Officer Hopkins worked with Mr. Curry at Sugarloaf Farms at some point prior to January 13, 2004.

RESPONSE: Admitted in part; denied in part. It is admitted that Officer Hopkins worked at Sugarloaf Farms at some point prior to January 13, 2004 and that Mr. Curry worked at the same facility pursuant to a work release program. Thus, Officer Hopkins and Mr. Curry both worked at the same facility at or about the same time, although to the extent the request is intended to suggest that they worked "with" each other on a particular project or on some joint venture, the request is denied.

REQUEST NO. 6:   Officer Hopkins worked with Mr. Curry at Brookstone Farms at some point prior to January 13, 2004.

RESPONSE: Denied (inasmuch as Officer Hopkins does not know what Brookstone Farms is).

REQUEST NO. 7:   Officer Hopkins is right-handed.

RESPONSE: Admitted.

REQUEST NO. 8: Officer Hopkins was aware of Mr. Curry's identity while Mr. Curry was in his vehicle immediately prior to Mr. Curry's arrest on or about January 13, 2004.

RESPONSE: Denied.

REQUEST NO. 9: Officer Hopkins suspected that Mr. Curry was the driver of the pursued vehicle while Mr. Curry was in his vehicle immediately prior to Mr. Curry's arrest on or about January 13, 2004.

RESPONSE: Denied.

REQUEST NO. 10: Officer Hopkins arrested Mr. Curry on or about January 13, 2004.

RESPONSE: Admitted in part; denied in part. It is admitted that Officer Hopkins participated in the pursuit of Mr. Curry with the intention of having him arrested. It is further admitted that Officer Hopkins was the officer of the Dover Police Department who initially apprehended Mr. Curry. Officer Hopkins did not, however, handcuff Mr. Curry or place him into a police vehicle. To the extent that the request considers Mr. Curry to have been "arrested" as of the time he was apprehended by Officer Hopkins, then Officer Hopkins, did, in fact arrest Mr. Curry. To the extent the request uses the term "arrested" to mean handcuffed and placed in a police vehicle, it is denied that Officer Hopkins arrested him.

REQUEST NO. 11: Officer Hopkins was involved in the arrest of Mr. Curry on or about January 13, 2004.

RESPONSE: Admitted.

REQUEST NO. 12: Officer Hopkins was the only officer to touch Mr. Curry prior to and during the course of Mr. Curry's arrest on or about January 13, 2004.

RESPONSE: Denied.

REQUEST NO. 13.    Officer Hopkins restrained Mr. Curry on or about January 13, 2004.

RESPONSE:    Objection. Inasmuch as Officer Hopkins does not know what the term "restrained" in this context means. By way of further response, please see response to Request No. 10.

REQUEST NO. 14.    Officer Hopkins handcuffed Mr. Curry on or about January 13, 2004.

RESPONSE:    Denied.

REQUEST NO. 15.    Officer Ralph Taylor was present during Mr. Curry's arrest on or about January 13, 2004.

RESPONSE:    Admitted.

REQUEST NO. 16:    Officer Jeffrey Gott was present during Mr. Curry's arrest on or about January 13, 2004.

RESPONSE:    Admitted.

REQUEST NO. 17:    Mr. Curry received emergency medical care after his arrest on or about January 13, 2004.

RESPONSE:    Admitted.

REQUEST NO. 18:    Officer Hopkins took Mr. Curry to receive emergency medical care after Mr. Curry's arrest on or about January 13, 2004.

RESPONSE:    Denied.

REQUEST NO. 19:    Officer Ralph Taylor took Mr. Curry to receive emergency medical care after Mr. Curry's arrest on or about January 13, 2004.

RESPONSE:    Admitted.

REQUEST NO. 20:    Officer Jeffrey Gott took Mr. Curry to receive emergency medical care after Mr. Curry's arrest on or about January 13, 2004.

RESPONSE: Denied.

REQUEST NO. 21: Officer Hopkins' K-9 unit was present during the arrest of Mr. Curry on or about January 13, 2004.

RESPONSE: Admitted.

REQUEST NO. 22: Officer Hopkins ordered his K-9 unit to attack Mr. Curry on or about January 13, 2004.

RESPONSE: Denied, specifically with respect to the term "attack".

REQUEST NO. 23: Officer Hopkins ordered his K-9 unit to attack Mr. Curry while Mr. Curry was handcuffed on or about January 13, 2004.

RESPONSE: Denied, specifically with respect to the term "attack".

REQUEST NO. 24: Officer Hopkins struck Mr. Curry with his fist on or about January 13, 2004.

RESPONSE: Denied.

REQUEST NO. 25: Officer Hopkins struck Mr. Curry with his fist while Mr. Curry was handcuffed on or about January 13, 2004.

RESPONSE: Denied.

REQUEST NO. 26: Officer Hopkins struck Mr. Curry with an instrument on or about January 13, 2004.

RESPONSE: Denied.

REQUEST NO. 27: Officer Hopkins struck Mr. Curry with an instrument while Mr. Curry was handcuffed on or about January 13, 2004.

RESPONSE: Denied.

REQUEST NO. 28: Officer Hopkins warned Mr. Curry that Officer Hopkins would release his K-9 unit before releasing his K-9 unit on or about January 13, 2004.

RESPONSE: Admitted.

REQUEST NO. 29: Officer Hopkins ordered Mr. Curry to stop running before Officer Hopkins released his K-9 unit on or about January 13, 2004.

RESPONSE: Admitted.

REQUEST NO. 30: During the chase and arrest of Mr. Curry on or about January 13, 2004, Office Hopkins followed all applicable K-9 procedures.

RESPONSE: Objection. As phrased in the request, it is unclear what the term "all applicable K-9 procedures" means. Without a more specific request, a more meaningful response is impossible. Without waiving this objection, however, it is admitted that Officer Hopkins followed all applicable Dover Police Department procedures in connection with Mr. Curry's apprehension on January 13, 2004.

REQUEST NO. 31: During the chase and arrest of Mr. Curry on or about January 13, 2004, Officer Hopkins followed all applicable police procedures.

RESPONSE: Objection. As phrased in the request, it is unclear what the term "all applicable police procedures" means. Without a more specific request, a more meaningful response is impossible. Without waiving this objection, however, it is admitted that Officer Hopkins followed all applicable Dover Police Department procedures in connection with Mr. Curry's apprehension on January 13, 2004.

REQUEST NO. 32: Officer Hopkins injured his right hand during the chase and arrest of Mr. Curry on or about January 13, 2004.

RESPONSE: Admitted.

REQUEST NO. 33.   Officer Hopkins injured his right arm during the chase and arrest of Mr. Curry on or about January 13, 2004.

    RESPONSE:   Admitted.

REQUEST NO. 34:   Office Hopkins received treatment for his injuries sustained during the case and arrest of Mr. Curry on or about January 13, 2004.

    RESPONSE:   Admitted.

REQUEST NO. 35:   Officer Hopkins received treatment at Kent General Hospital for his injuries sustained during the chase and arrest of Mr. Curry on or about January 13, 2004.

    RESPONSE:   Admitted.

REQUEST NO. 36:   Officer Hopkins received medical treatment on or about January 13, 2004.

    RESPONSE:   Admitted.

REQUEST NO. 37:   Officer Hopkins received medical treatment at Kent General Hospital on or about January 13, 2004.

    RESPONSE:   Admitted.

REQUEST NO. 38:   Officer Hopkins' K-9 unit attacked Mr. Curry on or about January 13, 2004.

    RESPONSE:   Denied.

REQUEST NO. 39:   Officer Hopkins' K-9 unit bit Mr. Curry on or about January 13, 2004.

    RESPONSE:   Admitted.

REQUEST NO. 40:   Officer Hopkins fired his weapon on or about January 13, 2004.

    RESPONSE:   Denied.

REQUEST NO. 41:   Officer Hopkins fired his weapon during the chase and arrest of Mr. Curry on or about January 13, 2004.

RESPONSE: Denied.

REQUEST NO. 42: A video camera in Officer Hopkins' vehicle recorded any part of the chase and arrest of Mr. Curry on or about January 13, 2004.

RESPONSE: Denied.

REQUEST NO. 43: A video camera in Officer Ralph Taylor's vehicle recorded any part of the chase and arrest of Mr. Curry on or about January 13, 2004.

RESPONSE: Admitted.

WHITEFORD TAYLOR PRESTON, LLC

/s/ Daniel A. Griffith
Daniel A. Griffith, Esquire (No. 4209)
1220 Market Street, Suite 608
Wilmington, DE   19801
(302) 482-8754

1790367